NOT DESIGNATED FOR PUBLICATION

No. 126,976

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Guardianship and Conservatorship of B.L.W.

MEMORANDUM OPINION

Appeal from Neosho District Court; TOD MICHAEL DAVIS, judge. Submitted without oral argument. Opinion filed October 11, 2024. Appeal dismissed.

*Sheryl Bussell*, of Chanute, for appellant father.

*Robert E. Johnson, II*, of Johnson Schowengerdt, P.A., of Iola, for appellees T.B. and B.B.

*Bret A. Heim*, guardian ad litem, of Heim Law Offices, P.A., of Iola.

Before MALONE, P.J., GREEN and HILL, JJ.

PER CURIAM: The district court granted B.L.W.'s maternal aunt and uncle temporary guardianship of B.L.W. after B.L.W.'s mother passed away. Father filed a motion to terminate the temporary guardianship, which the district court denied. Father brings this appeal claiming the district court erred in denying his motion to terminate the temporary guardianship. He also claims the district court erred in extending the order of temporary guardianship more than two years after the temporary order expired under the statute. For reasons we will endeavor to carefully explain in this opinion, we dismiss the appeal for lack of jurisdiction because Father is not appealing a final order, judgment, or decree entered by the district court in the guardianship and conservatorship proceeding.

1

FACTUAL AND PROCEDURAL BACKGROUND

In May 2021, B.L.W. (born in 2016) lived with his natural mother (Mother) in Grove, Oklahoma. Mother died on May 23, 2021. The next day, B.L.W.'s maternal aunt, T.B., and maternal uncle, B.B. (the petitioners), who lived in Chanute, petitioned for appointment of a guardian and conservator. The petitioners alleged that Father had failed to assume the duties of a parent and was not physically or emotionally capable of meeting the financial, physical, or emotional needs of the child, and it was in B.L.W.'s best interests to appoint them as guardians and conservators.

The petitioners requested temporary guardianship of B.L.W. pending a final hearing and requested the district court make an ex parte finding that an imminent danger was present and appoint them temporary guardians. The district court granted the petition of temporary guardianship "for 30 days after issuance of this order or until the Court hearing the Petition." The temporary order stated that the petition for the appointment of a guardian and conservator would be heard on June 24, 2021, at 2 p.m. The district court also appointed a guardian ad litem for B.L.W.

The petition and temporary order were served on Father on June 14, 2021, and counsel filed an entry of appearance on Father's behalf. On June 17, 2021, counsel for the petitioners moved to continue the June 24, 2021 hearing "to a date the Court deems just and proper." The record shows no ruling on the continuance request, but no final hearing to establish a permanent guardianship has ever been held in district court.

Some jurisdictional questions arose as Mother lived in Oklahoma with B.L.W. before her death. On September 9, 2021, the petitioners filed a brief in support of Kansas assuming jurisdiction and venue as all parties—T.B. and B.B., B.L.W., and Father— resided in Kansas. The petitioners alleged that Father had been in and out of prison throughout B.L.W.'s life and the district court in Oklahoma had granted Mother's requests

for multiple protection orders against Father while he was out of prison. Mother had custody of B.L.W. at the time of her death and Father had supervised parenting time. As to jurisdiction, the petitioners argued that Kansas courts had temporary emergency jurisdiction over the proceedings under K.S.A. 23-37,204 because of B.L.W.'s presence in Kansas and the emergency nature of the proceedings needed to protect B.L.W. from mistreatment or abandonment. Although B.L.W. had not lived in Kansas for six consecutive months, the petitioners argued Oklahoma was an inconvenient forum and jurisdiction should be transferred to Kansas. See Okla. Stat. tit. 43, § 551-207(A).

On September 29, 2021, Father's counsel moved to withdraw citing "a breakdown in the relationship between the client and counsel." The record contains no ruling on this motion, and it shows no action in the case from September 2021 to February 2023.

On February 28, 2023, Father, through new counsel, moved to terminate the guardianship under K.S.A. 59-3084(c) or, in the alternative, to remove the guardians and conservators. Father claimed the temporary guardians ignored their statutory duties under K.S.A. 59-3075(b)(1) to provide care, treatment, habilitation, education, and support and maintenance to B.L.W. Father also claimed the temporary guardians disrupted the adoptive placement of B.L.W. as T.B. and B.B. planned to adopt B.L.W. until they allowed him to reside with the maternal grandparents. Father also claimed the temporary guardians failed to file annual and special reports concerning B.L.W.'s status.

In May 2023, the petitioners answered Father's motion to terminate the guardianship, stating they had filed a motion with the district court in March 2023 to substitute B.L.W.'s maternal grandparents as parties in a separate adoption case. The answer also claimed that the petitioners had voluntarily consented to the adoption of B.L.W. by the maternal grandparents. The petitioners asserted that their failure to file annual and special reports with the district court was not grounds to terminate the guardianship. The petitioners stated they were preparing all reports and would file them

3

in the "immediate future," making that matter moot. Finally, the petitioners asserted that in the accompanying child in need of care (CINC) case, Father had admitted the best placement for B.L.W. was with maternal grandparents and, as a practical matter, even if the district court terminated their guardianship, B.L.W. would likely be placed with maternal grandparents—where he was already residing.

In response to the petitioners' answer, Father filed a supplemental memorandum of law in support of his motion to terminate the guardianship and conservatorship. Father claimed he did not consent to the guardianship established in May 2021, he had not been found unfit as a parent, and the Kansas parental preference doctrine should apply.

The petitioners then responded to Father's additional authorities, emphasizing the parental preference doctrine comes into effect absent a showing the natural parent is unfit. The petitioners asserted Father was unfit and asked the district court to maintain their guardianship until it determined Father's parental fitness.

On August 2, 2023, the petitioners moved to extend the temporary guardianship order. The petitioners acknowledged the district court had granted them temporary guardianship in 2021 and noted the district court could extend the authority of a temporary guardian upon the filing of a written request and a hearing to determine the need and appropriateness of the extension. The petitioners asserted an extension of the temporary guardianship was necessary to provide B.L.W. with proper care and support, would effectively resolve the pending CINC case, and would allow the parties to set a hearing to determine Father's parental fitness in the adoption case.

On August 24, 2023, the district court held a consolidated hearing in the pending CINC case, the adoption case, and the guardianship case. All parties were represented by counsel including the maternal grandparents who were described by their counsel as the "de facto plaintiffs or interested parties." The court-appointed guardian ad litem also

4

appeared. The district court announced it was taking up the motion to dismiss the CINC case, the motion to terminate the guardianship and conservatorship, and the motion to extend the temporary guardianship.

After hearing arguments of counsel, the district court announced that it was dismissing the CINC case. The district court denied Father's motion to terminate the guardianship and granted the motion to extend the order of temporary guardianship. The district court declined to enter any other orders except, by agreement of the parties, it ordered that Father shall continue to have supervised visits with B.L.W. through Hope Unlimited. The district court scheduled a review hearing for November 9, 2023.

Father timely appealed the district court's denial of his motion to terminate the guardianship. Our court's records show that Father filed a separate appeal of the order dismissing the CINC case, but that appeal was voluntarily dismissed. See No. 126,977 (order filed April 22, 2024). The record in the guardianship proceedings includes a hearing transcript showing that the district court later dismissed the adoption case.

Father filed a brief claiming the district court erred in denying his motion to terminate the guardianship for lack of jurisdiction. He also claims the district court erred in extending the order of temporary guardianship more than two years after the temporary order expired under the statute. The petitioners assert that the district court correctly found it had jurisdiction over the guardianship proceedings and properly extended the temporary guardianship order. The guardian ad litem filed a brief asserting the district court correctly ruled that it had jurisdiction over the guardianship case but questioned whether the district court properly extended the temporary guardianship order.

After briefing, this court ordered the parties to show cause why the appeal should not be dismissed for lack of jurisdiction because Father is not appealing a final order,

5

judgment, or decree entered by the district court in the guardianship and conservatorship proceeding. Both the appellant and the appellees responded to the show cause order.

## DOES THIS COURT HAVE JURISDICTION OVER THIS APPEAL?

We must first address whether this court has jurisdiction over this appeal. The right to appeal is entirely statutory and is not contained in the United States or Kansas Constitutions. *State v. Thurber*, 313 Kan. 1002, 1007, 492 P.3d 1185 (2021). The Kansas Constitution states that the Kansas Supreme Court "shall have . . . such appellate jurisdiction as may be provided by law." Kan. Const. art. 3, § 3. Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes, with some exceptions not applicable here. *In re T.S.*, 308 Kan. 306, 309, 419 P.3d 1159 (2018).

An appellate court has a duty to question jurisdiction on its own initiative. When the record discloses a lack of jurisdiction, the appellate court must dismiss the appeal. *Baker v. Hayden*, 313 Kan. 667, 668, 673, 490 P.3d 1164 (2021). Whether jurisdiction exists is a question of law, subject to unlimited appellate review. *City of Wichita v. Trotter*, 316 Kan. 310, 312, 514 P.3d 1050 (2022).

Father's docketing statement acknowledges that his only statutory basis for bringing this appeal is K.S.A. 2023 Supp. 59-2401a(b)(5) which allows an appeal "from any final order, judgment or decree entered in any proceeding pursuant to: . . . the act for obtaining a guardian or conservator, or both." Simply put, Father can only appeal a final order entered by the district court in this guardianship and conservatorship proceeding. Father has no such order because the district court has not entered one. The only order that the district court ever entered in this case was to grant the ex parte temporary order appointing T.B. and B.B. as temporary guardians of B.L.W. That temporary order was extended at the hearing on August 24, 2023. The case was then set for a review hearing,

6

but the record does not show the case has ever proceeded to a final hearing under K.S.A. 2023 Supp. 59-3067 for the appointment of a permanent guardian and conservator.

Father's response to the show cause order cites *In re Guardianship and Conservatorship of B.H.*, 309 Kan. 1097, 1109, 442 P.3d 457 (2019), for the proposition that the district court's denial of a motion to terminate a guardianship is an appealable order. But this case is easily distinguishable from our facts. *In re Guardianship and Conservatorship of B.H.* is an appeal from a permanent, albeit voluntary guardianship established for minor children in conjunction with a CINC case. In fact, the permanent guardianship had existed for six years when the parents moved to terminate the guardianship under K.S.A. 59-3091. The Kansas Supreme Court stated in its opinion that, under these facts, it had jurisdiction over the appeal because the district court's denial of a motion to terminate the guardianship was a final order under K.S.A. 2018 Supp. 59-2401a(b)(5). 309 Kan. at 1109.

Father also argues that his second issue about the district court's extension of the temporary guardianship order is appealable under the collateral order doctrine. The collateral order doctrine "permits an exception to the final order requirement in limited circumstances." *In re T.S.W.*, 294 Kan. 423, 431, 276 P.3d 133 (2012). Our Supreme Court explained:

> "[The collateral order] doctrine, which we sparingly apply, provides a narrow exception to the final order requirement. It 'allows appellate courts to reach "not only judgments that 'terminate an action,' but also a 'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.'
> "As the doctrine is applied in Kansas, an order may be collaterally appealable if it (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment. [Citations omitted.]" 294 Kan. at 434.

7

*In re T.S.W.* is also distinguishable from our facts. In that case, the Cherokee Nation challenged the district court's decision under the Indian Child Welfare Act (ICWA) to deviate from ICWA's placement preferences based on the biological non-Indian mother's preference that her child be placed with a non-Indian family. 294 Kan. at 425-26. The order was entered by the district court in a proceeding to terminate father's parental rights, even though there was no final order in that proceeding when the Cherokee Nation brought the appeal. Our Supreme Court determined it had jurisdiction over the appeal under the collateral order doctrine because the district court's decision granting deviation from ICWA's placement preferences resolved an issue wholly separate from the merits of the proceeding to terminate the father's parental rights. 294 Kan. at 434. The court also found that the third factor under the doctrine—whether the disputed issue will be effectively unreviewable upon appeal from a final judgment—was met because if the court declined jurisdiction, the child might be subject to a final adoption without notice to the Cherokee Nation before it could bring its appeal. 294 Kan. at 435.

The collateral order doctrine does not apply to the order extending the temporary guardianship because that order did not resolve an important issue completely separate from the merits of the action. Instead, the merits of this action deal with who is legally responsible for the care of B.L.W., an issue deeply related to the order of temporary guardianship. And the order is not effectively unreviewable upon appeal from a final judgment. The case in district court could have proceeded to a hearing for the appointment of a permanent guardian and conservator and, if Father received an adverse ruling from the final judgment at that hearing, he could still seek appellate review of whether the district court properly extended the temporary guardianship order.

Father's arguments do not persuade us that we have jurisdiction under K.S.A. 2023 Supp. 59-2401a(b)(5) to hear this appeal without a final order from the district court in this guardianship and conservatorship proceeding. We understand Father's frustration in that it appears this case has been pending in district court since 2021 without any final

8

order granting or denying the petition for appointment of a guardian and conservator. But when the district court extended the temporary guardianship in August 2023, Father could have simply asked the district court to schedule a final hearing under K.S.A. 2023 Supp. 59-3067 to decide whether a permanent guardian should be appointed for B.L.W. For all we know, Father might prevail at such a hearing resulting in the dismissal of the guardianship and conservatorship petition. But if Father received an adverse ruling at the hearing to establish a permanent guardianship, he would have a final order subject to appeal under K.S.A. 2023 Supp. 59-2401a(b)(5). Instead, Father is simply trying to bring a piecemeal, interlocutory appeal of a temporary order. Kansas has a clear policy against piecemeal appeals. *Gillespie v. Seymour*, 263 Kan. 650, 656, 952 P.2d 1313 (1998); *Goldman v. University of Kansas*, 52 Kan. App. 2d 222, 230, 365 P.3d 435 (2015).

We conclude that this court lacks jurisdiction to hear this appeal. As a result, we cannot reach the merits of the issues Father has raised and must dismiss the appeal. See *In re Estate of Lentz*, 312 Kan. 490, 504, 476 P.3d 1151 (2020) (finding appellate court should refrain from addressing merits of case when it lacks jurisdiction over appeal).

Appeal dismissed.